IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE CIPRESSI | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 10-1584 |
| BRISTOL BOROUGH, et al. | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                  February    27, 2012

Presently before the Court is Plaintiff's "Motion for Disqualification of Christopher P. Gerber, Esquire, Counsel for Defendants Bristol Borough, Arnold Porter, Joseph Moors and Randy Morris" (Doc. 54) ("Pl. Mot."), together with the "Reply of Defendants Borough of Bristol, Arnold Porter, Randy Morris and Joseph Moors to Plaintiff's Motion for Disqualification" (Doc. 59) ("Def. Reply") and "Supplemental Brief of Defendants, Borough of Bristol, Arnold Porter, Randy Morris and Joseph Moors to Plaintiff's Motion for Disqualification and Supplement to Motion for Disqualification" (Doc. 64) ("Supp. Br."). Upon careful consideration of these submissions, Plaintiff's Motion is **DENIED** without prejudice.[1]

**I.    FACTUAL AND PROCEDURAL BACKGROUND:**

On April 9, 2010, Joanne Cipressi (alternatively "Plaintiff" and "Cipressi") initiated the lawsuit underlying this Motion with a complaint against Bristol Borough, Arnold Porter (the Borough Chief of Police), Joseph Moors (a Borough Police Sergeant), and Randy Morris (a Borough

---

[1] We deny one aspect of the motion *with* prejudice, as explained within.  *See, infra,* pages 8-9.

Police Detective Sergeant) (collectively the "Defendants"), alleging violations of 42 U.S.C. §§ 1983 and 1988.  The complaint arose out of an incident in which Bristol Borough Police Officer Samuel Anderson, also named as a defendant, is alleged to have sexually assaulted Plaintiff.  Among the claims presented are those brought pursuant to *Monell v. City of New York Dept. of Soc. Servs.,* 436 U.S. 658 (1978), which sets out the standard for local government liability under § 1983.  (*See* Complaint (Doc. 1), Count II, ¶64 through 71.)  The specific Motion before us focuses upon certain interactions that took place between Christopher P. Gerber, Esquire ("Gerber"), who was acting as counsel for Defendants, and Police Officer Ritchie Webb ("Webb"), who was an "officer in charge" during the early morning hours of August 29, 2008 when Anderson allegedly committed the sexual assault upon Cipressi.

Following the initiation of the suit and his appointment as counsel for Defendants, Gerber called Webb to discuss the case.  On May 10, 2010, and again on September 13, 2010, he followed up with face-to-face meetings.  Cipressi asserts that during these meetings, Gerber:

> attempted to persuade Webb to change his testimony regarding his recollection of the events involving Anderson and plaintiff Cipressi, and the sexual activities involving other officers as well as other inappropriate and illegal conduct by BBPD officers and supervisors.

(Pl. Mot. at ¶11.c.)  Cipressi also asserts that these attempts were not productive and that "Webb made it absolutely clear to Gerber that he was not going to 'lie for anyone.'" (*Id.* at ¶11.e.)

In April 2011, Gerber was notified that plaintiff was seeking Webb's deposition.  Gerber wrote to the officer advising him of the deposition notice and stated in the body of the letter that "[n]either I nor anyone in my office will be representing you at the deposition." *(Id*. at ¶11.h.)[2]

---

[2]Confusingly, the letter included a header "Confidential Communication, Attorney Work Product, Attorney Client Privilege".

Webb became upset upon receiving this letter given his concern over what he saw as Gerber's misconduct and stated his "displeasure" in front of Borough Police Sergeant William Lutz. Plaintiff asserts that Webb was then accused on the same evening of threatening that he would "shoot someone" (whom Plaintiff states "on information and belief" was to have been Gerber) and that he became the subject of a police inquiry which led to his suspension for over 11 weeks. According to Plaintiff, Webb was ultimately exonerated, save only that he was disciplined for "conduct unbecoming of an officer."[3]   (*Id.* at ¶11.p.)

It is Plaintiff's submission that Gerber, along with Officer Moors and Chief Porter, "harassed, threatened and retaliated against [Webb] in an attempt to damage his reputation," (*id.* at ¶12) because Webb provided information to Gerber that was unhelpful to the Defendants' case.  Plaintiff claims that Gerber and members of the Borough Police Department retaliated against Webb and that Gerber "personally and actively" was involved in "subverting plaintiff's Constitutional right to a jury trial by engaging in conduct equivalent to the spoliation of evidence by attempting to influence a key witness for plaintiff whose testimony fully supports plaintiff's *Monell* claim against Defendant Bristol Borough." (*Id.* at ¶14).  As Plaintiff sees it, Gerber's attempted interference renders him "a substantial witness in plaintiff's underlying case."  (*Id.* at ¶15).  Finally, Plaintiff asserts that Gerber's interests are in opposition to those of the Defendants that he represents on the theory that he has an interest in "transferring blame for the retaliation on the Borough and denying his own involvement." (*Id.* at ¶18.)  Accordingly, she reasons that "[n]either Gerber nor the law firm of Siana, Bellwoar & McAndrew, LLP are appropriate counsel for Defendants...and therefore, should

---

[3] Plaintiff asserts that Sergeant Lutz later confirmed that Webb had not threatened anyone, but Webb was suspended pending the investigation into those allegations. (Pl. Mot. at 4 ¶11.l-m.)

be disqualified by the Court." (*Id.* at ¶19.)

On December 28, 2011, Plaintiff filed a supplement to the Motion (Doc. 58) ("Supp. Mot."), in which she points out that Officer Webb has now filed his own complaint against the Borough, Chief Porter, Sergeant Moors, Detective Sergeant Morris, Borough Mayor Robert Lebo, Borough Council President Ralph Diguiseppi, Jr., several other individual Borough Police Officers, as well as Gerber and his law firm. In that supplemental motion, Plaintiff reaffirms her position that Gerber's interest is in conflict with that of his clients and argues that the "Pennsylvania Rules of Professional Conduct mandate that he may no longer represent those defendants." (Supp. Mot. at ¶7).[4]

## II.   STANDARD OF REVIEW:

Our Court, which applies the Pennsylvania Rules of Professional Conduct, has the authority to disqualify counsel if the facts of a particular case warrant that disqualification is necessary to enforce and serve the intended goals of an applicable disciplinary rule. *See* Loc. R. Civ. P. 8.36 (Rule IV(B)) (2011). *See also Roberts v. Ferman*, 2011 WL 4381128, at *2 (E.D. Pa. Sept. 16, 2011). It is the case, however, that motions to disqualify are generally disfavored given that they seek to deprive parties of their choice of counsel and may be motivated by improper tactical considerations. *Capriotty v. Bell*, 1991 WL 22134, at *2 (E.D. Pa. Feb. 19, 1991) (citing *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D.Pa.1986)). Disqualification is "an extreme sanction that should not be imposed lightly." *Reg'l Emp'rs' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Trust v. Castellano*, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009) (internal quotations omitted). The party seeking to disqualify opposing counsel must make a clear showing that

---

[4] We do note that Gerber strongly denies any misconduct. (*See* Def. Reply at 2-5.)

continued representation would be impermissible and that disqualification is "necessary." *See Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) (citing *Commercial Credit Loans, Inc. v. Martin*, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984)). Vague and unsupported allegations are insufficient to meet this burden. *Id.*

### III. DISCUSSION:

In support of her position, Plaintiff relies upon Pennsylvania Rules of Professional Conduct 3.7 and 1.7. With respect to Rule 3.7, plaintiff sets out that Gerber should be disqualified because he has engaged in conduct that renders him a "key witness in the trial itself." (*See* Pl. Mot. at ¶19; 7-8.) Rule 3.7 states that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

A witness will be deemed "necessary" when he "has crucial information in his possession which must be divulged" and when that information is relevant and not protected by any privilege. *See W. Lewis Frame n Door, Inc. v. C & C Const. & Rehab. Specialist, Inc.,* 1999 WL 79502, at *1 (E.D. Pa. Feb.4, 1999). *See also Universal Athletic Sales Co. v. American Gym Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538-39 n.21 (3d Cir. 1976), *cert. denied*, 430 U.S. 984 (1977).

Where the information possessed by a witness can be obtained elsewhere or is cumulative, the court will not consider that witness to be "necessary." *Roberts*, 2011 WL 4381128, at *2. The conduct that must be measured against this standard is that Gerber:

> directly attempted to alter the testimony of a key witness who supports Plaintiff's claim that the Defendants failed to adequately hire, train, supervise and discipline their police department, and that failure led to the sexual assault on Plaintiff by one of its police officers.

(Pl. Mot. at 8.) Plaintiff apparently will seek Gerber's testimony to support her *Monell* claim against Defendant Bristol Borough. (*Id*. at 5.)

Based upon the record before us, we are unable to agree that Gerber would in fact be a "key witness" on the issues that are the subject matter of this litigation. Plaintiff has not, in any way, suggested that Gerber was involved in the hiring, training, supervision or discipline of police officers, or had any connection with the subject matter of the underlying lawsuit until he was retained to represent the Defendants long after the August 2008 incident. Even if we were to accept that Gerber may have sought to influence Officer Webb, what matters would be the testimony of Webb, who has stated that he was not influenced by Gerber, and not the testimony of Gerber. The applicable standard requires more than the speculation offered by Cipressi that Gerber will, in fact, be a "necessary" witness. Plaintiff has failed to meet her burden.

We will not, however, foreclose Plaintiff from renewing this Motion if discovery warrants further consideration upon a more complete record, given our view that a determination of whether Rule 3.7 requires the withdrawal of counsel should best be made on a full record at or close to the time of trial and not during pretrial proceedings. *See Javorski v. Nationwide Mut. Ins. Co.*, No. 06-1071, 2006 WL 324112, at *9 (W.D. Pa. Nov. 6, 2006).

We further note that, even assuming that Gerber is ultimately found to be disqualified, Plaintiff's argument that the law firm of Siana, Bellwoar & McAndrew, LLP should also be disqualified is without merit. Under Rule 3.7(b) of the Pennsylvania Rules of Professional Conduct, "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [other conflict of interest rules]." Rule 3.7(b) thus permits the law firm to continue its representation of the Defendants even if Gerber or another attorney from the firm is called as a witness at trial as long as a different firm attorney acts as trial counsel. Accordingly, this aspect of the Motion will be denied.

Turning to Rule 1.7, we note that the Rule provides that with certain exceptions (not applicable here), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." PA. R.P.C. 1.7. A "concurrent conflict of interest" is present when "(1) the representation of one client will be directly adverse to another client; or (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.* at (a)(1-2). Plaintiff claims that a conflict of interest exists between Gerber's clients and Gerber himself to the extent that he would presumably seek to advance his own personal interest, which could be contrary to that of Defendants.

We observe initially that this would not appear to be the suggestion of a conflict that is Plaintiff's to make. If there had been any concern about such a conflict as Plaintiff has articulated here, we would have expected that it would have been raised by the Borough or the other officers. It has not been, and we must therefore assume that the Defendants are satisfied with Gerber's representation.

Officer Webb apparently has information that Plaintiff believes bears favorably upon her *Monell* claim. She will, of course, be free to elicit this information from Officer Webb at trial. Whether she can elicit testimony about an alleged attempt by Gerber to influence Webb, however, is a different matter altogether. On the record before us, we have serious questions as to whether testimony from Webb regarding whether Gerber may have attempted to improperly influence him would even be admissible in the underlying case—let alone whether any evidence Plaintiff might seek from Gerber, which we understand would constitute a denial of the Webb allegations, would be admissible. If relevant at all, we are unwilling to accept that such statements establish a disqualifying conflict of interest. This is particularly the case where Officer Webb has starkly rejected Gerber's purported suggestions (*See* Pl. Mot. at ¶11.e (observing that "Webb made it absolutely clear that he was not going to 'lie for anyone.'").) Under these circumstances, we fail to see on the record before us how Plaintiff has met her burden to have Gerber disqualified.

An appropriate Order follows.